UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERTRUDE KENNEDY,

          NO. CIV. S-11-0066 LKK/KJN

    Plaintiff,

  v.

          O R D E R

WORLD ALLIANCE FINANCIAL CORP.; ORANGE COAST TITLE COMPANY; and DOES 1 through 20, inclusive of unidentified representatives of defendant WORLD ALLIANCE FINANCIAL CORP., who personally solicited,

    Defendants.
_____/

Plaintiff brings several claims arising out of the process by which a reverse mortgage was placed on her home. Defendant moves to dismiss all claims against it. For the reasons discussed below, defendants' motion is granted in part and denied in part.

**I. BACKGROUND**[1]

---

[1] The background statement is derived from plaintiff's complaint, the factual allegations of which are taken as true for purposes of this motion. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

1

Plaintiff Gertrude Kennedy ("plaintiff" or "Kennedy") is seeking rescission of a reverse mortgage agreement she entered into with defendant World Alliance Financial Corporation ("WAF"). At the time, plaintiff, a 71 year old widow, had an existing loan of $101,000 with a payment of $600 a month for her residence located in Vallejo, California.

Plaintiff alleges that on or before September 13, 2008, WAF's agents solicited her through telephone and mail for a reverse mortgage materially misrepresenting the details of the mortgage with the intent to defraud her.[2] (Pl.'s First Am. Compl. 2-5.) ("FAC"). Specifically, plaintiff alleges WAF's agents represented that the reverse mortgage would "encumber her property for $300,000," would allow her to take draws in the approximate amount of $150,000.00, and would relieve her from payments on her existing loan of $101,000.00. Id. at 2. Further, she alleges that she relied on this information, materials provided, and the endorsement of spokesperson Robert Wagner, when she agreed to the reverse mortgage. Id. at 4. In actuality, plaintiff asserts, she signed a

---

[2] Plaintiff alleges that defendant misrepresented the type of transaction as a "reverse mortgage" rather than a "home equity conversion line of credit." (Pl.'s First Am. Compl. 8:20-8:22.) Home Equity Conversion Mortgages are apparently commonly referred to as reverse mortgages See HUD's HECM Handbook, Dir. No. 4235.1 REV-1 (Nov. 18, 1994) ch. 1-2, available at http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4235.1/index.cfm (explaining purpose of HECM program "commonly referred to as reverse mortgages. . ."). While it may be true that in financial circles that is the case, it is certainly true that there is no reason to believe most people would know that the terms were interchangeable. Indeed this judge did not know it until reading the defendant's brief.

Home Equity Conversion Loan with only $20,000.00 in draws and with a loan amount, falsely indicated in her reformed Note and Deed of Trust, of $300,000.00 at a 13.7% interest rate. Id. at 3. She argues that this was a false recording of her loan because her debt was only for an amount of no more than $137,000.00 and with a reasonable expectation of a 3.5% interest rate. Id. at 6. In addition, plaintiff alleges that at the time she signed escrow documents for her reverse mortgage, she protested the loan amount of $300,000.00 by circling the amount and writing that she "[did] not understand." (Pl.'s Opp'n Def.'s Mot. Dismiss 1.)[3][4]

In response, defendant WAF has filed a 12(b)(6) motion to

---

[3] The court notes that plaintiff's allegations appear to be contradictory. On the one had, she alleges that she was induced to enter the loan because of WAF's representation that she would be entitled to $300,000 and on the other hand, she alleges that she did not understand why $300,000 was listed as the maximum mortgage amount. Plaintiff is permitted to allege in the alternative and, thus, such potential contradictions do not defeat her claims. See Fed. R. Civ. P. 8(d)(2-3). Plaintiff, however, is cautioned to refer to Wright & Miller: Federal Practice and Procedure: Civil 3d § 1285 ("A party therefore should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses or is otherwise justified in pleading in this fashion and the pleader can represent that he is not doing so for an improper purpose.") when filing her amended complaint.

[4] Relative to plaintiff's written protest of the loan amount, WAF argues that the defendant escrow company which has since settled with plaintiff, Orange Coast Title Company ("OCTC"), executed the document with plaintiff and WAF had "no reason or occasion" to know of plaintiff's alleged protest and thus is not liable for any wrongdoing by OCTC. (Def.'s Reply Opp'n 5.) The suggestion that defendant did not receive the loan papers or if it did, did not review them, seems highly suspect. In and event, however, this contention is a factual question which may not be resolved on a motion to dismiss.

3

1  dismiss plaintiff's complaint or, in the alternative, a 12(e)
2  motion for a more definite statement for plaintiff's fraud, unfair
3  business practice, and breach of fiduciary duty claims. Defendant's
4  primary argument is that plaintiff's claims are barred by
5  defendant's compliance with disclosures that federal regulations
6  required for reverse mortgages. Specifically, defendant argues
7  plaintiff's complaint demonstrates that WAF complied with
8  regulations provided by 24 C.F.R. § 206 and by the mandatory
9  Department of Housing and Urban Development's ("HUD") handbook for
10 Home Equity Conversion Mortgages ("HECM") or reverse mortgages.

## II. STANDARDS

**A.  Dismissal of Claims Governed by Fed. R. Civ. P. 8(a)(2)**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and

4

Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B.  Dismissal of Claims Governed by Fed. R. Civ. P. 9(b)**

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Fed. R. Civ. P. 9(b). See Vess, 317 F.3d at 1107. This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice intent, knowledge, and other conditions of a person's mind may be alleged generally." These

circumstances which must be stated with particularity include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant [] in the alleged fraudulent scheme.'" Id. at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

### III. ANALYSIS

**A.  Plaintiff's Claims Sounding In Fraud**

Plaintiff argues that she relied on misrepresentations by defendant WAF, which induced her to enter into a HECM loan. She seeks recession of her new mortgage agreement, restitution, and reformation of the deed of trust claiming fraud. Defendant WAF moves to dismiss these claims based on its asserted compliance with HUD regulations and HUD guidelines for HECM loan transactions.

The elements of a claim for intentional misrepresentation under California law are (1) misrepresentation (a false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance, and (5) resulting damages. Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004). As noted above claims for fraud are subject to a heightened pleading requirement under Fed. R. Civ.

P. 9(b).

Ordinarily, the decision of whether reliance is justifiable is a question for the trier of fact. <u>Alliance Mortgage Co. v. Rothwell</u>, 10 Cal. 4th 1226, 1239 (1995). However, where oral representations conflict with the terms of a subsequent written agreement, it has been held that a party cannot justifiably rely on such oral statements as a matter of law. See <u>Dias v. Nationwide Life Ins.</u>, 700 F. Supp. 2d 1204, 1216-17 (E.D. Cal. 2010); see also <u>Bank of the West v. Valley Nat. Bank of Az.</u>, 41 F.3d 471, 477 (9th Cir. 1994) ("[T]he clear and explicit language of the contract prevented justifiable reliance.").[5]

Each alleged misrepresentation is addressed in turn.

### 1. Alleged Misrepresentation as to Maximum Mortgage Amount

Plaintiff alleges that WAF misrepresented that the reverse mortgage transaction would provide a "substantial period of reverse payments or draws" and would provide "$300,000 of available funds." Plaintiff contends that this alleged misrepresentation caused plaintiff to "reasonably rely on the face amount of the $300,000 note as being her available line of credit." (Pl.'s FAC 8-9.) Defendant argues that it simply complied with Federal Regulations

---

[5] The rule seems perfectly reasonable when applied to commercial transactions where sophisticated parties and/or lawyers are at work. Whether the ordinary rule ought to apply to a seventy-one year old unsophisticated widow, where it may well be that the papers were fast shuffled (as they ordinarily are in home loan transactions) seems to be a reasonable question, but one which appears to be precluded by binding authority.

7

and the mandatory HUD handbook in recording a face value exceeding the loan amount which is meant to protect the borrower in the event the property appreciates in value. (Def.'s Mem. P. & A. Supp. Mot. Dismiss 4-5.)

The HUD handbook apparently does not require inclusion of a maximum mortgage amount in the loan documents in California. Rather, it provides that "[w]here the state law requires the mortgage to reflect a maximum mortgage amount, the lender must use an amount that is equal to 150% of the maximum claim amount." HUD's HECM Handbook, Dir. No. 4235.1 REV-1 (Nov. 18, 1994) ch. 6-6. There appears to be no California law requiring a maximum mortgage amount; on the other hand, there appears to be nothing to prohibit a lender from adopting a maximum mortgage amount and disclosing that amount even absent such a law. Nonetheless, doing so cannot provide that the conduct acts as a shield from suit predicated on compliance with the federal handbook. However, below I turn to an examination of the federal regulations for such light as they throw on the issues at bar.

Under the regulations explaining Home Equity Conversion Mortgage Insurance, the term "maximum claim amount" "means the lesser of the appraised value of the property, as determined by the appraisal used in underwriting the loan, or the maximum dollar amount for an area established by the Secretary for a one-family residence under section 203(b)(2) of the National Housing Act . . . as of the date of loan closing." 24 C.F.R. § 206.2(3). Section 203(b)(2) of the act applies to loans insured by the Federal

1  Housing Administration ("FHA"). HUD's Home Equity Conversion
2  Mortgages Handbook (4235.1) provides instructions to modify model
3  forms to comply with certain state laws. <u>See</u> Ch. 6. The handbook
4  describes the procedure for determining the appropriate maximum
5  mortgage amount:

>   HUD policy does not require a maximum mortgage amount to
>   be stated in the mortgage. Where State law requires the
>   mortgage to reflect a maximum mortgage amount, the
>   lender must use an amount that is equal to 150% of the
>   maximum claim amount. This amount is required because
>   the loan payments are secured not only by the current
>   value of the house but also by any possible appreciation
>   in value. This amount is intended to protect the
>   borrower in the later years of the mortgage. When a
>   maximum mortgage amount is stated in the mortgage, the
>   lender is not secured for payments to the borrower
>   beyond the stated amount. If the mortgage balance
>   reaches the maximum mortgage amount, payments to the
>   borrower would cease or the borrower would have to try
>   to extend the mortgage which may not be possible if the
>   property value has declined or if other liens were
>   placed on the property. Both of these risks are greatly
>   reduced when the maximum mortgage amount is a higher
>   amount

    Plaintiff attached four documents to her complaint in which she signed documents that listed a "maximum principal amount" of $300,000. On one of these documents, plaintiff circled the amount of $300,000 and wrote, "I don't understand it not right." Ex. A to Compl. She, nonetheless, signed the document. The other documents defendant contends explained, what was meant by "maximum principal amount." For example,

- "In return for amounts to be advanced by Lender up to a
  maximum principal amount of THREE HUNDRED THOUSAND AND 00/100
  ($300,000.00), to or for this benefit of Borrower under the
  terms of a Home Equity Conversion Loan Agreement . . . ,
  Borrower promises to pay to the order of Lender a principal
  amount equal to the sum of all Loan Advances made under the

9

1        Loan Agreement with Interest." Ex. E to Compl.

2  •  "This Security Instrument secures to Lender . . . the repayment of the debt advanced by the Note, with Interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of THREE HUNDRED THOUSAND AND 00/100 (U.S. $300,000.00) . . . ." Ex. F. to Compl.

•  "In return for amounts to be advanced by Lender up to a maximum principal amount of THREE HUNDRED THOUSAND AND 00/100 ($300,000.00) to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement . . . , Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made by Lender under the Loan Agreement with Interest." Ex. G to Compl.

The court must confess that it has required several readings to comprehend the meaning of the quoted language, if in fact I do understand it. Of course wiser judges and lawyers, even without experience in the subject matter may grasp the meaning immediately. The essence of plaintiff's misrepresentation claim is that WAF misrepresented that the reverse mortgage would provide plaintiff with $300,000 in available funds. The language of the documents plaintiff signed, apparently states that WAF could lend her an amount up to $300,000. The documents signed by plaintiff apparently acknowledge the possibility that plaintiff could receive $300,000, which is different than acknowledging that under the agreement she would receive that amount. Given the rule, however, it appears that plaintiff can not justifiably rely upon oral representations to the contrary.[6]

---

[6] Again whether the rule ought to apply to definitions only plainly apparent to the cognoscenti appears to be a legitimate but foreclosed question.

10

Alternatively, it may be said that while HUD's handbooks do not have the force of law in the instant case, they are entitled to persuasive authority as general statements of agency practice and procedure. Thus, arguably the HUD handbook defining maximum mortgage amount demonstrates that the $300,000 amount was not false. See Beck Park Apartments v. U.S. Dept. of Housing and Urban Development, 695 F.2d 366, 371 (9th Cir. 1982) (citing Rank v. Nimmo, 677 F.2d 692, 698 (9th Cir. 1982). Plaintiff does not dispute that her home was appraised for $200,000 or that $300,000 is 150% of the appraised value of her home. Plaintiff also does not provide any other explanation as to the meaning of maximum principal amount for reverse mortgages, although she did express her lack of understanding at the time she signed the documents. Compelled by binding authority, I conclude that plaintiff's claims premised on a theory that the maximum principal amount of $300,000 was fraudulent must be dismissed.[7]

### b. Required Loan Counseling

In her opposition, plaintiff alleges that "she never once spoke to a human being personally at any time during the transaction. . . ." (Pl.'s Opp'n Def.'s Mot. Dismiss 2:22-2:25.) While required under 24 C.F.R. § 206.21 and despite contrary evidence provided by defendants, plaintiff has not pled any misrepresentation. Thus, plaintiff's fraud claim premised on the

---

[7] Whether her claim suffices to raise a question as to the existence of a meeting of the minds sufficient to give rise to a binding contract is not raised by the instant pleadings.

11

absence of human communication is also dismissed.[8] Further, to the extent they are pled as separate causes of action instead of as a prayer for relief, plaintiff's claims for rescission, restitution, reformation, and punitive damages are also dismissed on the basis of the prohibited reliance on representations contrary to the signed written documents.

### B.   Unfair Business Practice under § 17200 Claim

Plaintiff alleges that defendant's "deceptive practices of inducing the elderly to sign for large trust deeds with large interest rates on sums which are not in fact advanced or owed by the elderly is an unfair business practice." (FAC 10.) Defendant moves to dismiss the claim asserting that plaintiff has not properly pled a cause a action. Alternatively, defendant moves for a more definite statement to ascertain what conduct in which WAF engaged plaintiff alleges to be a violation of the California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

The UCL proscribes "unlawful, unfair or fraudulent" business acts and practices. Plaintiff's complaint alleges that WAF engaged in a significant amount of conduct that it asserts was unfair. The court assumes that plaintiff's claim derives not from

---

[8] It is unclear whether plaintiff actually intended to premise a fraud claim based on this conduct. Nonetheless, plaintiff does raise this conduct in her opposition and defendant does not object to it as having not been alleged in her complaint. The issue is complicated by plaintiff's allegation that she was importuned by representatives of defendant to make the loan. In any event, as it stands the alleged conduct does not support a claim for fraud.

12

the $300,000 amount listed on her loan documents, but rather from mail and telephone solicitations and other communications made by WAF to induce plaintiff to obtain a reverse mortgage. See Compl. ¶¶ 3-6. Furthermore, the court also infers from plaintiff's complaint that she contends that this conduct was unfair because she was targeted as a member of a particularly vulnerable population. See, e.g., 25 C.F.R. § 206.41 (describing mandatory loan counseling for reverse mortgages). Based on these allegations, the court finds that plaintiff has stated a claim under the UCL.[9]

### C. Breach of Fiduciary Duty

Plaintiff alleges that Orange Coast Title Company ("OCTC"), the escrow agent defendant who settled plaintiff's claims against it, acted in "collusion and concert" with WAF to breach its fiduciary duty when it recorded the trust deed for a different amount and at a different interest rate than what was actually loaned to plaintiff. (Pl.'s FAC 12.)[10] Specifically, plaintiff

---

[9] The court grants plaintiff leave to file an amended complaint. Plaintiff is also free to amend this claim to describe other conduct she contends violates the act.

[10] In general, a lender does not owe a fiduciary duty to a borrower. "A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1093 n.1 (1991). "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." Oaks Management Corporation v. Superior Court, 145 Cal App. 4th 453, 488 (2006).

13

1  alleges OCTC breached a duty of due care and committed
2  constructive fraud "by closing escrow despite the written
3  instructions" by plaintiff protesting the amount of the loan. Id.
4  12. Plaintiff alleges OCTC acted with "undisclosed interest and
5  conflict based on compensation received from defendant WAF. . .
6  ." Id. 13.
7       While it is true that plaintiff has not alleged facts
8  supporting that WAF, the defendant in the present motion, owed
9  plaintiff a fiduciary duty, she has alleged a conspiracy in which
10 WAF was a conspirator and alleges that co-conspirator OCTC, the
11 escrow company, received compensation from WAC. Defendant has not
12 argued that plaintiff failed to state a claim against OCTC for
13 breach of fiduciary duty. Even under the more restrictive
14 pleading standards recently adopted by the Supreme Court, it
15 appears to the court that plaintiff has stated a claim of breach
16 of fiduciary duty against WAF.

### IV. CONCLUSION

18      For the reasons described above defendant's motion to
19 dismiss all of plaintiff's fraud claim against WAF is granted.
20 The motion is otherwise denied. All dismissals are without
21 prejudice. Plaintiff is granted leave of twenty-one (21) days to
22 file an amended complaint. If plaintiff does not file an amended
23 complaint within that time period, her claims against WAF will
24 proceed only on her claims that WAF violated the Unfair
25 Competition Law and breached a fiduciary duty owed to plaintiff.
26 ////

Case 2:11-cv-00066-LKK-CKD   Document 14   Filed 05/31/11   Page 15 of 15

1    IT IS SO ORDERED.

2    DATED:  May 31, 2011.

                                   /s/ Lawrence K. Karlton
                                   LAWRENCE K. KARLTON
                                   SENIOR JUDGE
                                   UNITED STATES DISTRICT COURT

15